**54**

BANKERS TRUST
COMPANY, Plaintiff,

v.

Daniel RHOADES, Herman Soifer and
Milton Braten, Defendants.

No. 82 Civ. 5590 (WCC).

United States District Court,
S.D. New York.

March 2, 1990.

---

Moses & Singer (David Picker, of counsel), New York City, for plaintiff.

Rosenman & Colin (Joel W. Sternman, Audry Weintrob, of counsel), New York City, for defendant Herman Soifer.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Defendant Herman Soifer moves pursuant to Local Civil Rule 3(j) for reargument of those portions of this Court's December 6, 1989 Opinion which 1) collaterally estopped Soifer from contesting the bankruptcy court's determination of bankruptcy fraud and 2) treated depositions taken in an earlier action against Braten Apparel Corporation ("BAC") and Daniel Rhoades as if originally taken in this action against Soifer. For the reasons stated below, Soifer's motion to reargue is granted; however, upon reargument the Court adheres to its original determination.

*Background*

In its December 6, 1989 Opinion, 108 B.R. 423, familiarity with which is assumed, this Court held that Soifer was collaterally estopped from contesting the determination that BAC had engaged in bankruptcy fraud. The Court first stated that it could be inferred from Soifer's status as 45% shareholder of BAC and his failure to present any evidence to the contrary that "he shared the control of the [revocation] proceedings." Second, the Court reasoned that as a 45% shareholder of BAC, Soifer "had a substantial identity of interest [with BAC] in avoiding a finding of bankruptcy fraud."

The Court also concluded that depositions taken in a 1981 action ("Civil Rights Action") brought by Bankers Trust Company ("Bankers") against Rhoades and BAC would be treated, as to Soifer, as if originally taken in this action. The Court noted that:

> As this Court has ruled that Braten and Soifer are collaterally estopped from relitigating issues resolved against BAC in the revocation proceeding, it would be inconsistent to hold that Braten and Soifer are not successors in interest [under Rule 32(a)(4)] to BAC in the Civil Rights Action for the more limited purpose of treating the deposition testimony as if originally taken in this action.

## Reargument

Local Rule 3(j) of the Civil Rules of this court requires a party seeking reargument to "set[ ] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Soifer has now submitted an affidavit setting forth facts which were either not before the Court or before it in improper form when the original motion was decided.[1]

Bankers argues that granting this motion to reargue unfairly allows Soifer's counsel, who chose not to submit Soifer's affidavit in response to the original motion, to relitigate the same issue decided in the Court's earlier Opinion. *See e.g. Litton Indus., Inc. v. Lehman Brothers*, No. 86 Civ. 6447 1989 WL 162315 (S.D.N.Y. Aug. 4, 1989) ("A party, in its motion for reargument, may not advance new facts, issues or arguments not previously presented to the court"). The Court recognizes that addressing the merits of Soifer's motion is a departure from the strict standard usually applied to the determination whether to grant a motion to reargue and emphasizes that its decision should not be read to support motions to reargue any time counsel desires to present previously available evidence that was not submitted to the Court. Since the new evidence presented directly addresses and casts serious doubts on the Court's inference that Soifer shared control of the revocation proceedings, one of the reasons for the finding of collateral estoppel, it would elevate form over substance to hold that the Court must avert its eyes from material evidence because of earlier omissions or technical deficiencies.

## Collateral Estoppel

### 1. Control

Soifer has now submitted an affidavit setting forth specific facts intended to show that there are material questions as to whether he shared control of the revocation proceedings. Specifically, Soifer claims that although he gave deposition and trial testimony after he was subpoenaed by Bankers, he "did not participate in or in any way influence BAC's conduct of that proceeding. Nor did [he] have any shared control or any means to control or share the control of BAC's participation in that proceeding." Soifer Aff. ¶ 5. According to Soifer, none of the four law firms that represented BAC sought Soifer's input or advised him of decisions or developments in the case. *Id.* ¶ 6. Soifer did not offer or seek to offer advice concerning the revocation proceedings nor did he retain or consult with counsel in connection with the impact of the proceedings on him personally. *Id.* ¶ 6.

Soifer's affidavit presents material issues of fact which preclude a summary judgment applying collateral estoppel based on Soifer's control of the proceedings. However, the Court's ruling of collateral estoppel was also based on the identity of interest shared by Soifer and BAC, by virtue of Soifer's status as 45% shareholder. Because the new facts presented by Soifer do nothing to alter this conclusion, the Court reaffirms its prior finding of collateral estoppel.

### 2. Identity of Interest

Under the doctrine of virtual representation, the court determines whether the interests of the nonparty were adequately represented by a party to the prior suit, *see Southwest Airlines Co. v. Texas Int'l. Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). In its earlier decision, this Court found that BAC and Soifer had a substantial identity of interest based on Soifer's shareholder status and the foresee-

---

1. In its opposition to Banker's original motion, it appears that Soifer's counsel was unclear that a request for the application of collateral estoppel is made by a summary judgment motion. For example, although he submitted a Rule 3(g) statement in response to Banker's motion, Soifer's counsel stated that Banker's moving papers did not indicate directly or indirectly that summary judgment was sought and asked the Court to strike Banker's Rule 3(g) statement. Soifer's Rule 3(g) Statement ¶ 1 n. 1. While Soifer's affidavit does not present evidence that was previously unavailable, Soifer's counsel's failure to include Soifer's affidavit appeared to be less of a tactical decision than a failure to realize the nature of Banker's motion. As this evidence is now before the Court in proper form, it is considered in this motion to reargue.

ability of future litigation against him. Soifer argues that the doctrine of virtual representation is inapplicable to him because his status as 45% shareholder of BAC is questionable [2] and because he did not foresee the possibility of future litigation against him.

Soifer's affidavit sets forth the following facts. In October 1976, Soifer confirmed the terms of an agreement to purchase 2,700 shares of BAC's 6,000 shares of common stock at its fair market value as of October 31, 1976.[3] In July 1977, Soifer signed a check payable to Braten in the amount of $15,000 and a note in the amount of $460,000. Under the terms of the note, Soifer was to pay the $460,000, plus interest, to Braten in annual installments of $20,000. According to Soifer, he made no payments to Braten beyond his original $15,000 cash investment. Soifer Aff. ¶ 3, 4. Soifer further claims that no shares were issued to him nor has he ever exercised any rights or received any benefits as a BAC shareholder. *Id.* at ¶ 4. Based on the foregoing, Soifer argues that any conclusion that he and BAC shared an identity of interest in the revocation proceedings because of his alleged 45% shareholder status is refuted.

Bankers argues that Soifer was listed as a 45% stockholder in BAC's June 9, 1978 proxy statement, as well as identified as a stockholder in a September 30, 1982 document which was produced by order of the Bankruptcy Court.[4] Braten testified in the revocation proceedings that he owned 55% of BAC and Soifer owned the rest. Soifer testified at the revocation proceedings that he relinquished full ownership of Brookfield in exchange for an ownership interest in BAC. Additionally, Bankers maintains that even if Braten decided to forgive the payments due to him under the note, it is immaterial to Soifer's 45% interest in BAC. From Braten's testimony in the revocation proceedings, it appears that Braten considered Soifer a 45% shareholder even if Soifer had not made payments to Braten under the terms of the note.

The information provided by Soifer does not materially affect this Court's prior Opinion. Whether Soifer breached the contract by failing to pay the sums owed or Braten waived or excused further payment by Soifer, Soifer is a 45% shareholder by virtue of signing the October 1976 agreement under which he purchased "at this time" 45% of BAC's stock from Braten. As explained in 8 Williston on Contracts § 953, at 321 (3d ed. 1964), "the purchaser of shares, absent any agreement to the contrary, is generally entitled to . . . all the privileges of a shareholder, except voting power, from the time he makes the purchase contract, whether or not he has made payment, has taken legal title, or has been registered on the corporate records as a shareholder" (citations omitted).[5] The Oc-

---

**2.** This information was previously presented to the Court in Soifer's Rule 3(g) statement submitted in his opposition to Banker's original motion for summary judgment. However, Soifer's Rule 3(g) statement, because it was signed by Soifer's counsel, did not amount to evidence admissible in determining whether there were material issues of fact. *See Zanghi v. Inc. Village of Old Brookville,* 752 F.2d 42, 47 (2d Cir. 1985) ("A Rule 3(g) Statement by Counsel . . . cannot be a substitute for an affidavit as to the facts"). Accordingly, the Court did not consider the information contained therein in its earlier decision. Although this information does not literally constitute "factual matters that were put before the court on its underlying motion," *see Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y.1985), the Court will treat it as such.

**3.** The text of the letter which Soifer confirmed read as follows:

This acknowledges your purchase at this time of 2,700 shares of the 6,000 outstanding shares of common stock of Braten Apparel Corporation, at fair market value as of October 31, 1976.

I have arranged with Shearson, Hayden Stone Inc. to appraise the value of the stock for the purpose of determining the price you will pay. Please sign below at the place indicated, to confirm this purchase.

**4.** According to Bankers, Soifer ceded ownership of Brookfield in exchange for the purchase of a 45% interest in BAC as well as the presidency of Brookfield.

**5.** New York Uniform Commercial Code § 8–301, which provides that upon its transfer a purchaser of a security acquires the rights in the security which the transferor had and § 8–313 which delineates the methods by which such transfers occur do not control the determina-

tober 1976 agreement clearly fixed the rights and obligations of each party, although it delayed payment for the shares. While this Court's prior opinion finding an identity of interest between Soifer and BAC also noted that Soifer should have foreseen future litigation against him, a fact which Soifer disputes in his affidavit, his status as 45% shareholder in BAC is sufficient to find that they shared a substantial identity of interest in avoiding a finding of bankruptcy fraud.

Soifer has not presented in its moving papers any controlling law which would lead this Court to conclude that BAC and Soifer did not share a substantial identity of interest. While Soifer attempts to distinguish cases cited by Bankers in its opposition to the motion to reargue, he does no more than raise new arguments which could have been, but were not, raised in response to Banker's original motion. This is improper under Local Rule 3(j). *See Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989).

*Depositions*

In light of this Court's adherence to its decision that Soifer is collaterally estopped, and because its original decision to treat the depositions as if originally taken in this action was substantially dependent on this finding, the portion of the decision concerning Banker's motion under Rule 32(a)(4), insofar as it pertains to Soifer, is reaffirmed as well.

## CONCLUSION

For the foregoing reasons, reargument is granted but the Court adheres to its original decision.

SO ORDERED.

tion whether Soifer is a shareholder. *See Crow v. Newspaper Dealer Supply, Inc.,* 603 F.Supp. 847 (E.D.Mo.1985) (Missouri Uniform Commercial Code does not control whether individual is equitable owner of shares).