**DEPARTMENT OF ECONOMIC DEVELOPMENT, Plaintiff,**

v.

**ARTHUR ANDERSEN & CO. (U.S.A.), Arthur Andersen & Co. (Republic of Ireland), and Arthur Andersen & Co. (United Kingdom), Defendants–Third–Party Plaintiffs,**

v.

**Alex H. FETHERSTON, C. Shaun Harte, Ronald J. Henderson, Anthony S. Hopkins, and James Sim, Third–Party Defendants.**

No. 85 Civ. 1292 (CES).

United States District Court,
S.D. New York.

Nov. 22, 1991.

Mudge Rose Guthrie Alexander & Ferdon by Malcolm R. Schade, Walter P. Loughlin, Robert Sidorsky, New York City, for plaintiff.

Breed, Abbott & Morgan by James D. Zirin, James J. Sabella, Paul D. Connuck, New York City, for defendants-third-party plaintiffs.

## MEMORANDUM DECISION

STEWART, District Judge.

Presently before the Court in this civil RICO action is the plaintiff's motion, pursuant to Rule 3(j) of the Local Rules for the United States District Court for the Southern District of New York, for reconsideration of the Court's October 18, 1991 Memo-

randum Decision ("Decision") granting in part and denying in part defendants' motion, 139 F.R.D. 295, pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure, for an order directing plaintiffs to produce certain documents. All documents for which plaintiff Department of Economic Development ("DED") claimed executive privilege as well as attorney-client and work product privilege were ordered by this Court to be produced.[1] Decision, at 13. Defendants in this case are Arthur Andersen & Co. (USA), Arthur Andersen & Co. (Republic of Ireland) and Arthur Andersen & Co. (United Kingdom) (hereinafter collectively "AA"). This action, in which DED seeks $500,000,000 in RICO treble damages, arises out of the British Government's 1978 investment in DeLorean Motor Cars Limited. The background of this action is fully set forth in the Court's October 18, 1991 Decision, familiarity with which is assumed. Plaintiff now seeks reconsideration and *in camera* review of approximately 75 attorney-client documents, 500 work product/attorney-client documents and 110 Cabinet papers.[2] Pl's.Mem.Supp.Recons. at 13.

## DISCUSSION

Local Rule 3(j) provides, in pertinent part, that: "[a] notice of motion for reargument shall be served ... with ... a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." The standard for granting a motion to reargue "is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont de Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y.1985) "A request for reargument is not an occasion to

---

**1.** Our decision held that documents in the possession of the Metropolitan Police Force are not in plaintiff's control within the meaning of Rule 34 of the Federal Rules of Civil procedure and plaintiff was therefore not compelled to produce them. Decision at 13.

**2.** Plaintiff claims that it is:
duty-bound to call to the Court's attention the very limited number of materials which were not previously submitted to the Court and

whose privileged character, in our considered judgment, is either clear on the face of the documents, or clearly indicated by reference to the privilege lists or the affidavits previously submitted by the DED and other British Government departments in opposition to AA's motion to compel, or by reference to factual evidence we now seek leave to submit. Pl's.Mem,Supp.Recons. at 5.

reassert arguments previously raised, but dismissed by the court." *Morgan Guaranty Trust Co. of New York v. Garrett Corp.*, 625 F.Supp. 752, 756 (S.D.N.Y.1986). Rule 3(j) was not intended to advance "the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988) (quoting *Lewis v. New York Telephone*, 83 Civ. 7129, slip op. at 2 (S.D.N.Y. Jan. 29, 1986) [1986 WL 1441]).

■ Plaintiff in this case asserts that had this Court previously seen the "materials" which are now in issue, their privileged character would have been clear and the motion would have been decided otherwise. We do not agree. At the time that the October 18, 1991 Decision was rendered, this Court was aware that there were documents which we had not seen. Decision at 299 note 4. The Decision did not rest upon our conclusion that the documents in question, in and of themselves, were not sensitive. On the contrary, as the Decision makes clear, this Court, mindful of the sensitive nature of some of the documents, applied a balancing test, in which the various interests at stake were weighed. Decision at 298–300. As we articulated in the Decision, "[w]hen balancing the interests in this case, it is useful to recall that there is a strict order of confidentiality which has been in place in this case since the outset", and "[t]herefore the concerns regarding public disclosure of this material are significantly minimized." Decision at 299. We further held that "the British Government's position as plaintiff in this case tips the balance of interests in favor of disclosure of the documents." [3] *Id.* Plaintiff's argument that the documents requested contain records of the deliberative process of departments and agencies of the British Government and are, therefore, not discoverable, was considered by this Court. We stated however, that "by asserting claims of fraud against AA, the British Government necessarily places at issue questions of knowledge, jus-

tifiable reliance and causation." Decision at 299. We found that "where the deliberations of government are genuinely at issue, privileges designed to shield the deliberative process from public scrutiny 'may not be raised as a bar against disclosure.' " Decision at 299 (quoting *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y.1986)). And "[w]here the adjudication of fraud claims turns upon issues of knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable." *Id.* We thus concluded that "the governmental privilege must give way." *Id.*

Our decision of October 18, 1991 is unambiguous. Also unambiguous is the holding that "[t]he only proper ground on which a party may move to reargue an unambiguous order 'is that the court has overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court.' " *Wesley McCain v. Phoenix Resources, Inc.*, 84 Civ. 0901 (S.D.N.Y. Jan. 30, 1991) [1991 WL 17859] (quoting *Bozsi Limited Partnership v. Lynott*, 676 F.Supp. 505, 509 (S.D.N.Y.1987)). Plaintiff has neither raised new matters nor directed this Court to any controlling decisions which, had we considered, might have tipped the balance in their favor. With their present motion for reconsideration, plaintiff merely replicates its' previous arguments, adding only the specter of *even more* privileged documents as punctuation. The privileged nature of the documents was considered and weighed against their probative value in a case alleging fraud and calling for $500,000,000 in RICO treble damages. This Court found that the asserted privilege must yield. "The Opinion of this Court," it has been said, "was not an adverse party's submission to which plaintiffs are entitled to respond." *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989).

## CONCLUSION

For the reasons set forth above, plaintiff's motion, pursuant to Local Rule 3(j),

---

**3.** It is noteworthy that one advantage of DED filing its action in this Court is the availability of treble damages. Treble damages are not similarly available under controlling British Law. *See* Decision at 298, note 2.

for reconsideration of this Court's October 18, 1991 Memorandum Decision is denied.

SO ORDERED.